FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

JUN 3 0 2006

MATTHEW J. DYKMAN
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LELAND TAYLOR,
Mineral Claimant,

Plaintiff,

vs.                                       No. CIV 04-0473 MCA/RLP

THE UNITED STATES OF AMERICA,
et al.,

Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *pro se* Plaintiff Leland Taylor's *Motion for Reconsideration Order Denying BLM Temporary Restraining Order* [Doc. 65], filed October 20, 2005. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court denies the motion.

## I. BACKGROUND

The underlying facts of this case have been set out in various prior orders of this Court and need not be repeated in full here. For purposes of the instant motion, it should be noted that on August 23 2005, Plaintiff filed a *Motion for Temporary Restraining Order Bureau of Land Management* [Doc. 56], alleging that he had been irreparably harmed by Defendant United States of America's actions in withdrawing lands on which humate was located. The Court held a hearing in Plaintiff's motion on October 7, 2005. [See Doc. 71, "Clerk's Minutes"]. On October 11, 2005, the Court entered an *Order* denying the motion,



having concluded, among other things, that (1) Plaintiff had not demonstrated that he would suffer irreparable harm if a temporary restraining order ("TRO") were not issued against Defendant United States of America; (2) Plaintiff had not shown a substantial likelihood that he would prevail on one or more of his claims; (3) the threatened harm to Plaintiff did not outweigh any harm or injury that issuance of a TRO might cause Defendant United States of America; and (4) the issuance of a TRO would have been contrary to the public interest under the circumstances. [Doc. 62]. In its *Order*, the Court twice acknowledged Plaintiff's *pro se* status and the need to afford him some latitude on account of that status. Notwithstanding the fact that Plaintiff was proceeding *pro se*, however, the Court determined that "Rule 65 specifically requires that in seeking the type of relief sought by Plaintiff, a litigant must demonstrate that, absent such relief, immediate and irreparable injury, loss, or damage would result to the litigant. At the hearing, Plaintiff failed to articulate the specific relief sought." [Id.].

Plaintiff now seeks reconsideration of the October 11, 2005 *Order* denying his motion for a TRO. As grounds for his current motion, Plaintiff asserts that he has suffered irreparable harm as a result of Defendant United States of America's decision to treat as non-precedential a decision of the Bankruptcy Court (subsequently affirmed by United States District Judge James A. Parker) finding, among other things, that humate found at Plaintiff's Clod Buster mining site was a locatable mineral. [Doc. 65 at unnumbered 3]. Plaintiff also maintains that

2

> [i]rreparable harm is being done to the Mineral Claimant plaintiff as the minerals being sold are locatable and cannot be replaced from the properties in this case, outside of the Clod Buster Mining claim. Furthermore, the entire operations of humate production whether at the Agronics minesite or elsewhere is not feasible without purchasing the mineral from the BLM which is in violation of the mining Act of 1872 §§ 22 *et seq.*, and could be voided at any time when it becomes apparent that the locatability of the mineral is being sidestepped and the purchase contracts are void. Mineral Claimant plaintiff suffers lack of income, right of claim possession, use of the mineral claims and a livelihood based upon ownership and royalty income from the mineral estate.

[Id. at 4]. Finally, Plaintiff contends that "[s]ubstantial likelihood of prevalence in this matter is obvious" given that the Bankruptcy Court and Judge Parker have already determined the locatability of humate. [Id. at 4-5].

## II. ANALYSIS

Plaintiff has not stated the authority pursuant to which he seeks reconsideration. [See generally Doc. 65]. However, Rule 54(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that an order adjudicating fewer than all the claims or rights and liabilities of fewer than all the parties is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. See Fed.R.Civ.P. 54(b). Indeed, "[u]ntil final decree the [district] court always retains jurisdiction to modify or rescind a prior interlocutory order. Lindsey v. Dayton-Hudson Corp., 592 F.2d 1118, 1121 (10th Cir. 1979) (*citing* Fed.R.Civ.P. 54(b)). Revision of an interlocutory order is not subject to the restrictive provisions of Rule 60(b), which allows for relief from a final

3

judgment or order on grounds including but not limited to mistake, inadvertence, surprise, or excusable neglect; newly discovered evidence; and fraud. See Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1470 (4th Cir. 1991); see also Covey v. CIT Corp., 71 F.R.D. 487, 490 (E.D.Okla.1975) (adjudication of motion to dismiss without prejudice fewer than all parties was interlocutory, subject to revision until date of adjudication of remaining claims or parties, and not subject to restrictive provisions of Rule 60(b)). Instead, "'[i]nterlocutory orders and judgments are ... left within the plenary power of the Court that rendered them to afford such relief from them as justice requires.'" Fayetteville Investors, 936 F.2d at 1473 (*quoting* 7 MOORE'S FEDERAL PRACTICE, ¶ 60.20, p. 60-170).

The Court has considered Plaintiff's motion for reconsideration and, upon further review of the *Order* giving rise to the motion, concludes that Plaintiff is not entitled to the relief he seeks. To the extent that Plaintiff claims irreparable harm in the form of lack of income and lack of livelihood based upon royalty income from the mineral estate, the Court notes that "simple economic loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary damages." Heideman v. South Salt Lake City, 348 F.3d 1182, 1189 (10th Cir. 2003). To the extent Plaintiff asserts that he is being prevented from mining at the Clod Buster site, the Court notes that Defendant United States of America has consented to Plaintiff's mining of humate at that site. [Doc. 69 at 1]. The Court recognized this fact in the *Order* that is the subject of Plaintiff's instant motion. [See

Doc. 62 at 2 ("Evidence adduced [at the hearing on plaintiff's motion for temporary restraining order] indicated that Defendant United States of America was willing to cooperate with Plaintiff in securing his mining permits, which involved a process of application involving the State Defendants. Plaintiff presented no specific evidence concerning difficulty in securing a permit from the State Defendants.")]. Because Plaintiff has failed to present the Court with a justifiable reason for it to modify or rescind its October 11, 2005 *Order*, the Court declines to do so. See Lindsey, 592 F.2d at 1121.

Finally, with respect to Plaintiff's assertion that this Court was unaware of the Orders issued by the Bankruptcy Court and by Judge Parker,[1] the record should note that this Court at all relevant times considered carefully all documents presented by Plaintiff in support of his claims. However, Plaintiff submitted as Exhibit 11 to his original *Complaint for Declartory [sic] Judgement [sic]* an incomplete copy of the Bankruptcy Court's Findings of Fact and Conclusions of Law. [See Doc. 1; Exh. 11]. More specifically, Plaintiff submitted only pages one through six of that document. The Court rendered its decision

---

[1] See Doc. 65 at unnumbered 5-6, wherein Plaintiff states that

> [i]t is of significant concern to the Plaintiff that this court has requested Orders issued by Judges McFeeley and Parker. The lack of awareness of these documents filed with the *Original Complaint* and referred to throughout the pleadings in this case casts serious doubt on the awareness of this Court to the seriousness of the issues involved.

5

denying Plaintiff's motion for a TRO on the record made by Plaintiff.[2]

The Bankruptcy Court's Findings of Fact and Conclusions of Law pertained to the Clod Buster mining site and no other. At the hearing on Plaintiff's motion for a TRO, Defendant United States conceded Plaintiff's right to mine humate at the Clod Buster site. To the extent that Plaintiff argued at the hearing that the Bankruptcy Court's decision was relevant to his right to mine humate at other sites, it was Plaintiff's burden to provide an accurate and sufficient record, including complete copies of all Bankruptcy Court pleadings he deemed pertinent and wished this Court to consider. Consequently, the Court requested that Plaintiff and counsel for the United States confer and present to the Court a complete version of the Bankruptcy Court's Findings of Fact and Conclusions of Law, which counsel for the United States subsequently provided.

This Court then considered these Findings of Fact and Conclusions of Law, as well as Judge Parker's Order. Because Judge Parker's Order of April 26, 1998 remanded the

---

[2] At the time the Court rendered its decision, Plaintiff's exhibits, including Exhibit 11, the partial copy of the Bankruptcy Court Order, were not technically part of the record or properly before the Court. This is because Taylor, who after filing his original complaint filed several amended complaints without leave of Court or Defendants' consent, was directed by this Court's April 8, 2005 *Order* to file one consolidated final complaint in which he was to include all claims for relief and name all parties from whom he sought such relief. [See Doc. 40]. Taylor thereafter filed his *Final Amended Complaint*. [Doc. 41]. Taylor, however, failed to attach exhibits to the *Final Amended Complaint* and, instead, referred therein to the exhibits attached to his earlier, but stricken, *Complaints*. Even though Taylor was specifically and expressly instructed to include in the *Final Amended Complaint* "all claims and all causes of action as he may have against any named Defendant [and to] state with particularity each and every claim and ... conform to and comply with all applicable Rules of Civil Procedure and local rules of practice of this Court[,]" [Doc. 40], the Court noted Taylor's *pro se* status and consequently considered the exhibits attached to the earlier *Complaints* as if they also were attached to the *Final Amended Complaint*. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

matter back to the Bankruptcy Court for additional findings on the issues of standing and jurisdiction, this Court also secured from the Tenth Circuit storage depository a copy of the Supplemental Findings of Fact and Conclusions of Law[3] entered by the Bankruptcy Court on June 29, 1998. This was done on the Court's own initiative.[4]

This Court is not unsympathetic to the hurdles faced by a *pro se* litigant pursuing a claim in federal court. It is for this reason that the Court has not only liberally construed Plaintiff's pleadings in this matter, see Haines, 404 U.S. at 521, but, as the record reflects, also taken additional steps to ensure that Plaintiff's interests have been protected throughout these proceedings. These steps include (1) allowing Plaintiff, who had already thrice amended his original *Complaint*, to file one final complaint encompassing all claims against all parties; (2) considering as exhibits to that final complaint exhibits that technically had been stricken from the record and not refiled;[5] (3) rescheduling a status conference for which Plaintiff failed to appear, having accepted Plaintiff's explanation that he had not received notice even though the docket reflected that notice was sent to counsel of record as shown on the Court's docket; and (4) granting Plaintiff's request for a one-hour hearing on the

---

[3] This Court actually had an employee of the Bankruptcy Court's Office of the Clerk secure the entire case file from the Tenth Circuit's storage depository and had this employee duplicate and forward to this Court a copy of the Supplemental Findings of Fact and Conclusions of Law.

[4] Complete copies of the referenced Bankruptcy Court pleadings and Judge Parker's Order of April 17, 2000 are attached to the *Memorandum Opinion and Order* addressing Defendants' motions to dismiss and filed contemporaneously this date.

[5] See supra footnote 2.

motion that is the subject of his request for reconsideration, a motion for a TRO that was in many respects virtually identical to a previously denied TRO motion.

## III. CONCLUSION

Rule 54(b) of the Federal Rules of Civil Procedures provides this Court with the authority to reconsider and modify an interlocutory order such as the one that is the subject of Plaintiff's *Motion for Reconsideration Order Denying BLM Temporary Restraining Order*. See Fed.R.Civ.P. 54(b); Lindsey, 592 F.2d at 1121. In this case, however, the Court discerns no grounds for either modifying or rescinding its *Order* of October 11, 2005. Accordingly, Plaintiff's motion will be denied.

**IT IS, THEREFORE, ORDERED** that Plaintiff's *Motion for Reconsideration Order Denying BLM Temporary Restraining Order* [Doc 65] is **DENIED**.

**SO ORDERED** this 30th day of June, 2006, in Albuquerque, New Mexico.

M. CHRISTINA ARMIJO
United States District Judge